UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DANIEL J. BEISWANGER, JR., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:21-CV-112 |
| RICOH USA, INC., LISA JERRETT, and GARRETT BRODERICK, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on the Partial Motion to Dismiss Amended Complaint filed by Defendants Ricoh USA, Inc., Lisa Jerrett and Garrett Broderick (ECF No. 24). Plaintiff Daniel J. Beiswanger, Jr., filed a response in opposition (ECF No. 35-1) and Defendants filed a reply (ECF No. 34). Beiswanger also filed a motion for hearing (ECF No. 32), to which Defendants responded (ECF No. 33). For the reasons explained below, the motion for hearing is DENIED[1] and the motion to dismiss is GRANTED. Beiswanger's claims against Defendants

---

[1] Plaintiff moved for a hearing on Defendants' partial motion to dismiss, contending that "[o]ral [a]rgument is warranted based upon the landmark decision of *Mount Lemmon Fire Dist. v. Guido*, 139 S. Ct. 22 (2018) and its application to individual liability under the ADEA and this case." Plaintiff's Request for Oral Argument (ECF No. 32), pp. 1-2. Beiswanger also "believes the other issues presented for determination are sufficiently nuanced to render oral argument of assistance to the Court." *Id.*, p. 2. Defendants responded by maintaining that "[b]ecause the *Guido* decision is not a 'landmark decision,' as Plaintiff contends, and the Supreme Court's ruling in that case is inapplicable to the legal issues involved in this litigation, oral argument is not necessary on Defendants' Partial Motion to Dismiss." Defendants' Opposition to Plaintiff's Request for Oral Argument (ECF No. 33), p. 1. The Defendants are correct and the Court denies the motion for oral argument because, as discussed below, the *Mount Lemmon* decision is neither a landmark decision nor does it support Beiswanger's argument that individual liability exists under the ADEA. The Court also does not find the issues presented in Defendants' motion to dismiss so complicated or nuanced as to necessitate oral argument. The motion will be resolved on the briefs.

Lisa Jerrett and Garrett Broderick are DISMISSED; his disparate impact age discrimination claim against Ricoh is also DISMISSED. Ricoh did not challenge Beiswanger's disparate treatment age discrimination claim and that claim remains pending (against Ricoh only).

**I. Background.**

Daniel Beiswanger worked for Ricoh USA, Inc., for 35 years, starting as a warehouse employee and working his way up to a management position. Amended Complaint (ECF No. 15), p. 3. Beiswanger was never disciplined during his tenure at Ricoh and planned "to work for Ricoh until retirement." *Id*.

Ricoh had a company policy prohibiting any employee from bringing a weapon to work. In April of 2016, Beiswanger took "unloaded firearms to a non-Ricoh facility known as the 'Muncie Parts Drop' . . . to meet co-workers for the purpose of learning gun safety during non-working hours. No ammunition was ever present, and the location of the gun safety training was not property owned by Ricoh." *Id*.

"On August 7, 2019, Ricoh offered Beiswanger a Voluntary Separation Incentive Package ('VSIP'), the second VSIP package offered to only older workers." *Id*. Beiswanger declined the VSIP. In September 2019, "about 6 weeks after Beiswanger refused Ricoh's VSIP package[,] Beiswanger and "all individuals involved in the Incident [involving the firearms] were terminated" . . . and "[a]ll such individuals were over the age of forty (40), demonstrating a clear and disparate impact on older employees resulting from the application of the weapons policy." *Id*., p. 4. Beiswanger also alleges that "younger similarly situated employees have violated the same weapons policy and/or similar or substantially similar company policies and were not terminated for such violation(s). Specifically, other younger similarly situated employees are

2

carrying weapons into the workplace at Ricoh and not being terminated." *Id*.[2]

In his response in opposition to the motion to dismiss, Beiswanger elaborates a bit about the Incident in 2016:

> In April 2016, Beiswanger was getting his concealed carry permit and brought a recently purchased, unloaded gun to a non-Ricoh facility known as the "Muncie Parts Drop" to meet coworkers for the purpose of learning gun safety during non-working hours (the "Incident"). . . . During a lunch break, other employees showed Beiswanger how to clean and handle the unloaded gun. . . . Defendants claim Beiswanger violated the Policy through his involvement in the Incident. . . . The Muncie parts drop does not have any Ricoh signage or indication that it is owned by Ricoh. . . .
>
> Over three (3) years later, in July 2019, another Ricoh employee raised concerns that his co-worker was creating a hostile work environment. . . . [Lisa] Jerrett then conducted the investigation of the employee's complaint.. . . That investigation . . . revealed Beiswanger had brought his unloaded firearm to the Muncie parts drop three (3) years prior. . . .
>
> On September 25, 2019, without warning, and as the result of a dubious allegation concerning the events which occurred in April 2016, Beiswanger was fired. . . . Despite the Incident having occurred more than three (3) years prior and in no way violating the illegal weapons policy maintained and (sometimes) applied by Defendants, all individuals involved in the incident were terminated in September 2019.

Plaintiff's Response in Opposition (ECF No. 35-1), pp. 3-4 (internal citations to record omitted).

So Beiswanger does not dispute that he brought a gun to the workplace. He does claim that it wasn't a violation of the policy under the circumstances, but that doesn't matter. The issue before the Court now is not whether Ricoh properly applied the policy when it fired Beiswanger

---

[2] The Defendants' motion for partial dismissal does not challenge Beiswanger's disparate treatment claim. His allegations regarding disparate treatment are included in this factual recitation for completeness, but are not relevant to his disparate impact claim. For example, and as discussed at greater length below, Beiswanger's allegations that Ricoh intentionally applied its weapons policy differently against older workers state a claim for disparate treatment, not disparate impact; the same goes for his allegation that Ricoh used the policy as a pretext to fire him after he refused a voluntary separation offer.

(and the others), but whether the application of the policy resulted in a disparate impact on older workers. If Ricoh was using the weapons policy as a sword to get rid of Beiswanger, while not employing it when younger employees violated it (as Beiswanger alleges), that is disparate treatment, not disparate impact.

Defendant Lisa Jerrett is Ricoh's Human Resources Manager and Defendant Garrett Broderick is the company's Director of Security and Investigations. *Id*., p. 2. Beiswanger alleges that "Ricoh, Jerrett, and Broderick collectively decided to terminate Beiswanger on the basis of his age in violation of federal law, using the Incident as a pretext for such discrimination." *Id*., p. 4.

Beiswanger pleads two claims against the Defendants under the Age Discrimination in Employment Act–a disparate treatment claim, alleging that he was intentionally "terminated on the basis of his age[,]" (*id*., pp. 4-5) and a disparate impact claim, alleging that Ricoh's "application of the facially neutral weapons policy resulted in multiple older workers being terminated, thereby causing a significantly disproportionate adverse impact based on age[]" (*id*., p. 5). Beiswanger brings his ADEA claims not just against Ricoh, his former employer, but also against Jerrett and Broderick, individually, asserting that they are also "'employer[s]' for the purposes of the ADEA as that term is defined in 29 U.S.C. § 630(b) and interpreted by *Mount Lemmon Fire Dist. v. Guido*, 139 S.Ct. 22 (2018)." *Id*., p. 2. In other words, Beiswanger argues that the Supreme Court's decision in *Lemmon* opened the door to individual liability under the ADEA and therefore Jerrett and Broderick can be sued under the act along with Ricoh.

**II. Standard of Review.**

The Defendants bring their partial motion to dismiss under Federal Rule 12(b)(6). "A

4

judge reviewing a complaint pursuant to Rule 12(b)(6) must construe the allegations in the complaint in the light most favorable to the non-moving party, accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant." *Knowles v. Hudson*, 2019 WL 4306364, at *2 (N.D. Ind. Sept. 11, 2019) (citing *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018)). Under the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ray v. City of Chicago*, 629 F.3d 660, 662-63 (7th Cir. 2011); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "Even if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has 'nudged their claims across the line from conceivable to plausible.'" *Knowles*, 2019 WL 4306364, at *2 (quoting *Twombly*, 550 U.S. at 570).

**III. Discussion.**

The Defendants move the Court to dismiss Beiswanger's disparate impact claim and his individual liability claims against Jerrett and Broderick, for the following reasons:

> First, Plaintiff has failed to exhaust his administrative remedies as to his disparate impact claim, as he must under the ADEA. Although he filed two charges of discrimination, both claimed disparate treatment discrimination–not disparate impact discrimination–which is a separate and distinct legal claim. Because he has failed to exhaust his administrative remedies with regard to his disparate impact claim, Count II must be dismissed. More fundamentally, however, Plaintiff failed to even reference Ms. Jerrett or Mr. Broderick in either of the two charges of discrimination that he filed, thus failing to exhaust his administrative remedies as to them. For this separate reason, Ms. Jerrett and Mr. Broderick must be dismissed from this lawsuit as well.
>
> Second, Plaintiff's ADEA claims against Ms. Jerrett and Mr. Broderick must also be dismissed because there is no individual liability under the ADEA, as consistently confirmed by legal authority both within the Seventh Circuit and across the country.
>
> Finally, Count II of Plaintiff's Amended Complaint, in which he alleges disparate impact discrimination, must still be dismissed because it relies solely on threadbare allegations and legal conclusions that are insufficient to survive a motion to dismiss, particularly under the heighte[ne]d pleading standard applicable to such claims under the ADEA. Accordingly, Count II must be dismissed.

Defendants' Brief in Support of Partial Motion to Dismiss (ECF No. 25), pp. 1-2.

### A. Individual liability claims.

Beiswanger named Jerrett and Broderick as defendants and argues that he can do so because the Supreme Court opened the door, as it were, to individual liability under the ADEA in its decision in *Mount Lemmon Fire Dist. v. Guido*, 139 S.Ct. 22 (2018). As the Defendants point out, Beiswanger is not the first ADEA plaintiff to press this argument, but no court has accepted the invitation to hold that the ADEA provides a cause of action against individual employees or

6

"agents" of private employers. The Defendants are correct that the *Mount Lemmon* case did not establish individual liability under the ADEA and therefore Beiswanger's claims against Ms. Jerrett and Mr. Broderick must be dismissed. The Defendants argue as follows:

> Plaintiffs' ADEA claims against these individual Defendants must . . . be dismissed because there is no individual liability under the ADEA. *See Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) (noting that Title VII, the ADA, and the ADEA use virtually the same definition of "employer" and that "courts routinely apply arguments regarding individual liability to all three statutes interchangeably") (citing *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279-1280 (7th Cir. 1995)); *Horwitz v. Bd. of Educ.*, 260 F.3d 602, 610, n.2 (7th Cir. 2001) ("Horowitz has brought her ADEA and retaliation claim based on the ADEA against only the Board. She has properly done so, as we have suggested there is no individual liability under the ADEA."); *Lehman v. Goshen Cmty. Sch. Sys. & Diane Woodworth*, No. 3:19-CV-982 . . . , 2020 U.S. Dist. LEXIS 70324 (N.D. Ind. Apr. 22, 2020) (finding that the ADEA ". . . doesn't impose individual liability on a person like Diane Woodworth because she isn't an employer."); *Lai v. Ngoc Ta*, No. 2:18-CV-456 . . . , 2019 U.S. Dist. LEXIS 87781 (N.D. Ind. May 24, 2019) ("Neither a supervisor nor an owner is an 'employer' for the purposes of liability under the ADEA . . . Because neither an owner nor a supervisor is an employee for the purposes of liability under the ADEA, the motion to dismiss is granted on this basis."); *Purcell v. Ind. Univ.–S. Bend*, No. 3:13 CV 386, 2014 U.S. Dist. LEXIS 129979, *15 (N.D. Ind. Sept. 17, 2014) (". . . [T]here is no individual liability under Title VII or the ADEA."); *Uhlman v. Panares*, No. 2:07-CV-405 . . . , 2008 U.S. Dist. LEXIS 36500 (N.D. Ind. May 2, 2008) (noting that "the Seventh Circuit has given every indication that individual supervisors who are not otherwise employers cannot be sued under the ADEA."); *Ames v. Hutchinson*, No. 1:19-cv-04282 . . . , 2021 U.S. Dist. LEXIS 59448, *6 (S.D. Ind. Mar. 29, 2021) ("Similarly, Ames cannot bring ADEA claims against the Individual Defendants because there is no individual liability under the ADEA") (internal quotations omitted); *Haymon v. Metra*, No. 18 C 848, 2020 U.S. Dist. LEXIS 56624, *14-15 (Mar. 31, 2020) ("[N]either Title VII, the ADA, nor the ADEA permit individual-person liability (outside the context of sole proprietors) . . . Instead, these anti-discrimination laws allow plaintiffs to sue only the employer as an entity.").
>
> Other Courts of Appeal across the country have found that individual liability does not exist under the ADEA. *See Novak v. Wolfe Paper Co.*, No. 19-4044, 2021 U.S. App. LEXIS 8870, *19 (6th Cir. Mar. 25, 2021); . . . *Muhammad v. Cummis*, 621 Fed. App'x. 96, 99 (3d Cir. 2015); *Cherry v. Toussaint*, 50 F. App'x 476, 477 (2d Cir. 2002); *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996);

> *Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir. 1995); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994); *Miller v. Maxwell's Int'l Inc.*, 991 F.3d 583, 587 (9th Cir. 1993) *cert. denied sub nom Miller v. La Rosa*, 510 U.S. 1109 (1994). In light of the clear and uniform case law rejecting individual liability under the ADEA, Ms. Jerrett and Mr. Broderick should be dismissed as defendants in this matter.

Defendants' Brief in Support (ECF No. 25), pp. 7-9. The Defendants further argue:

> In an effort to resolve this issue without judicial intervention, undersigned counsel contacted Plaintiff's counsel to request that they voluntarily dismiss the individual defendants. Plaintiff's counsel indicated that they believe that the U.S. Supreme Court's opinion in *Mount Lemon Fire Dep't v. Guido*, 139 S. Ct. 22 (2018) provides a basis for individual liability under the ADEA. It does not. The Guido court addressed the following question: "Does the ADEA's numerosity specification (20 or more employees), applicable to 'a person engaged in an industry affecting commerce,' apply as well to state entities (including state political subdivisions)." *Id*. at 24. The Court noted that the ADEA's definition of employer contained reference to any agent of an employer. *Id*. at 26. The Court then dropped a footnote stating: **"We need not linger over possible applications of the agent clause, for no question of agent liability is before us in this case."** This footnote does not support an interpretation that the Court intends to extend agency liability to individual defendants, as Plaintiff's counsel contends. Indeed, this argument has been summarily rejected by the only court to consider it. *See Tosca-Reynoso v. Prajapati*, Civil Action No. 18-11571-PBS, 2021 U.S. Dist. LEXIS 57419, at *9 (D. Mass. Feb. 10, 2021).
>
> Importantly, since *Guido*, numerous courts within the Seventh Circuit have declined to recognize individual liability under the ADEA, as cited above.

*Id*., pp. 7-8, n. 2 (boldface in original). In *Tosca-Reynoso v. Prajapati*, the district court rejected the plaintiff's argument that *Mount Lemmon* should be interpreted to provide for individual liability in ADEA cases:

> Finally, Tosca-Reynoso argues that Prajapati may be sued as an individual under the ADEA. She bases her contention on the Supreme Court's decision in *Mount Lemon Fire Dist. v. Guido*, 139 S. Ct. 22 (2018). But the Court's decision in *Guido* expressly stated that "no question of agent liability is before us in this case." *Id*. at 26 n.2. Without any ruling from this circuit holding that individuals may be liable under the ADEA, I . . . conclude that Tosca-Reynoso's relevant claims against Prajapati should be dismissed.

8

*Tosca-Reynoso v. Prajapati*, 2021 WL 1088124, at *4. The District Court for the District of Massachusetts, however, is no longer "the only court to consider" this issue. Since briefing was completed in this case, another district court–in this circuit–considered and rejected this same argument:

> The Court declines to extend the holding in *Mt. Lemmon* to include individual agents of private employers. *Mt. Lemmon* focused solely on whether state entities could be sued under the ADEA. *Mt. Lemmon*, 139 S. Ct. at 25. Indeed, as Plaintiff admits, *Mt. Lemmon* does not mention, much less analyze, the issue of whether the ADEA provides a cause of action against individual "agents" of private employees. . . . Nor has Plaintiff cited any case after *Mt. Lemmon* that has adopted Plaintiff's reading of that case. As it is, courts in this circuit have held for at least two-and-a-half decades that there is no individual liability under the ADEA. *See Horwitz*, 260 F.3d at 610; *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 52 & n. 2 (7th Cir. 1995); *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 & n. 2 (7th Cir. 1995). **In the absence of a decision of the Supreme Court or the Seventh Circuit decision expressly vacating or abrogating the holdings of the Court of Appeals in these cases, this Court is bound by precedent to dismiss ADEA claims brought against individual agents of private employers.** *See Ross v. Univ. of Chicago*, No. 18-CV-4200, 2018 WL 6448464, at *10 (N.D. Ill. Dec. 10, 2018) (dismissing ADEA claim against individual "because a supervisor cannot be held individually liable for claims asserted under . . . the ADEA"); *Aku v. Chicago Bd. of Educ.*, 290 F.Supp.3d 852, 861 (N.D. Ill. 2017) (same). Plaintiff's ADEA claims against Defendants Weaver and Hartshorn are therefore dismissed.

*Cullotta v. United Surgical Partners Int'l, Inc.*, No. 19-CV-06490, 2021 WL 3367193, at *10 (N.D. Ill. Aug. 3, 2021) (italics and boldface added).[3] This Court echoes the *Cullotta* court and declines to extend the holding in *Mt. Lemmon* to include individual agents of private employers. Accordingly, the Defendants' partial motion to dismiss is granted as to Beiswanger's claims

---

[3] Beiswanger based his argument regarding individual liability on the fact that, according to him, "[t]here is no clear precedent *barring* individual liability. . . . Courts in the 7th [sic] Circuit have not explicitly prohibited individual liability in cases such as this." Plaintiff's (ECF No. 35-1), p. 8 (italics added). In light of the *Cullotta* decision and this Court's decision today, Beiswanger's statement is no longer true.

9

against Jerrett and Broderick.[4]

### B. Disparate impact claim.

"To prevail on a disparate-impact claim, a plaintiff must demonstrate that a 'specific, facially neutral employment practice caused a significantly disproportionate adverse impact based on age.'" *Dayton v. Oakton Cmty. Coll.*, 907 F.3d 460, 465 (7th Cir. 2018) (quoting *Carson v. Lake County*, 865 F.3d 526, 536 (7th Cir. 2017)). "Unlike disparate-treatment claims, disparate-impact claims do not require proof of discriminatory motive." *Id.* (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)).

But even though Beiswanger does not need to establish discriminatory intent on the part of Ricoh, he still must show *how* the policy had a disparate impact on employees over 40. As another district court explained, a plaintiff bringing an ADEA disparate impact claim "*must demonstrate the existence of a statistical disparity significant enough to give rise to an inference of discrimination. . . .* Indeed, "[s]tatistical evidence is crucial in disparate impact cases, where plaintiffs need not prove discriminatory intent but must show that specific employment practices" impact older workers "in a . . . pattern significantly different from that of [younger workers]." *Ficken v. Clinton*, 841 F. Supp. 2d 85, 88-89 (D.D.C. 2012) (italics added). In the present case, Beiswanger presents no facts–or even sufficient allegations–to support his conclusion that the weapons policy itself caused any such disparity. He does not allege any facts that would indicate that the application of the weapons policy caused *any* disparity between older

---

[4] Because Beiswanger cannot, as a matter of law, bring any ADEA claim against Jerrett or Broderick individually, the Court need not discuss the Defendants' alternative argument that he is precluded from doing so because he made no mention whatsoever of either Jerrett or Broderick in his Charges of Discrimination (which is true) and therefore failed to exhaust his administrative remedies against them.

and younger employees–only that in this instance the employees fired for violating it were, by happenstance, all over 40. As Ricoh states it:

> In this case, Plaintiff alleges that the policy that caused the disparate impact was Ricoh's weapons policy. Amended Complaint, ¶ 27. That is essentially all he alleges–that he was fired due to the policy, that his co-workers involved in the same incident as he were also fired due to the policy, and that they are over 40. *See* Amended Complaint. He does not allege any facts or statistics supporting a plausible finding that the workplace policy had a disparate impact on older workers generally. *Id*. He only pleads that he and the other employees involved in the same incident–all of whom were over 40–were terminated. *Id*. Because he has simply failed to satisfy the bar set for pleading disparate impact cases under the ADEA, his claim should be dismissed.

Defendants' Brief in Support (ECF No. 25), p. 13.

> Beiswanger responds by arguing as follows:
>
> Defendants fault Beiswanger for an alleged failure to provide "statistical facts" in support of his disparate impact claim. But, again, Defendants cite no case law holding that a claimant must plead "statistical facts" in his or her initial Charge or initial Complaint without the benefit of having conducted thorough discovery. Regardless, Beiswanger does plead a persuasive statistic: all employees eliminated through the Defendants' application of the otherwise neutral weapons policy following the Incident were over the age of 40. That "statistic" would be the following: 100% of the workers eliminated from the application of the weapons policy were in the same protected class, evidencing an adverse impact on older workers.

Plaintiff's Response in Opposition (ECF No. 35-1), p. 6. So Beiswanger argues that because the only employees fired as a result of the enforcement of the policy happened to be over 40, it therefore follows that the policy itself had a disparate impact on older employees.

Beiswanger's argument is a house of cards–a flimsy structure without support. To state it more colloquially, it is lipstick on a pig. He argues that the fact that he and the other fired employees were over 40 is all the "statistical evidence" he needs to muster to show that the weapons policy had a disparate impact on older workers. But he fails to present any evidence

11

whatsoever, or even any allegation, that Ricoh's application of the weapons policy impacted older workers in any manner "significantly different" from younger workers. The only "statistical" evidence Beiswanger presents is the fact that he and the other terminated employees happened to be over 40, which Ricoh correctly argues is a conclusion that is insufficient to survive a motion to dismiss. Beiswanger's argument amounts to one of *res ipsa loquitor*–the fact that all the fired employees were over 40 speaks for itself and is sufficient to establish a disparate impact claim. Beiswanger presents no authority for this argument, just as he presented no authority to support his individual liability claims. Under Beiswanger's theory, a company could not enforce *any* otherwise valid and neutral policy in *any* situation where the affected employees all happened to be over 40. This is illogical. Beiswanger's allegations are insufficient to support a reasonable inference that the weapons policy had a disparate impact. It certainly had an impact, given that he and his coworkers were fired, but he does not and cannot show that this adverse impact was "disparate." "For example, lack of age-neutrality 'may be manifested either by a facially discriminatory policy or by a policy which, though age-neutral on its face, has the effect of discriminating against older persons, say, *by leading inexorably to the retention of younger employees while similarly situated older employees are given their walking papers.*'" *Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc.*, 804 F.3d 127, 132 (1st Cir. 2015) (internal citations omitted). A disparate-impact claim involves "employment practices that are facially neutral in their treatment of different groups but that in fact *fall more harshly on one group than another*." *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 929 (7th Cir. 2018) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (italics added)). Beiswanger's allegations do not show that Ricoh's weapons policy "falls more harshly on [older employees] than [younger

12

employees]," only that in this specific and isolated instance, it fell harshly on him and his over-40 workers. He does not explain (or even allege) how the policy would have led to a different result if he and the other workers had *not* been in the protected class. *O'Brien*, 900 F.3d at 928-29 ("Here the plaintiffs have specifically identified a cause for the disparate impact: Caterpillar's decision to condition benefits on retirement eligibility, a status ***strongly correlated with age***. No more is required.") (emphasis added). In present case, Beiswanger has failed to show, or even allege, that Ricoh's weapons policy is in any way "correlated with age." All he alleges is that he and the other fired employees were over 40. He then makes a leap of logic–and wants the Court to do the same–by claiming that because *only* employees over 40 were fired (because no younger employees were involved in the Incident!), it is reasonable to conclude that the weapons policy had a disparate impact on older workers. As Ricoh correctly argues, this is a legal conclusion and as such is insufficient to overcome Ricoh's motion to dismiss this claim. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

Finally, Ricoh also argues that Beiswanger cannot maintain a disparate impact claim for a more fundamental reason–because he failed to file a charge of discrimination alleging disparate impact discrimination and therefore failed to exhaust his administrative remedy for such a claim. Defendants' Brief in Support (ECF No. 25), p. 4. As Ricoh states, "'[t]o bring an ADEA claim in federal court, a plaintiff must first raise it in a charge before the EEOC.'" *Id*. (quoting *Tyburski v. City of Chi*., 964 F.3d 590, 601 (7th Cir. 2020)). Ricoh argues that "[h]ere, Plaintiff failed to exhaust his administrative remedies as to a disparate impact claim because his Charges alleged only a disparate treatment claim." *Id*., p. 5.

Beiswanger filed two Charges of Discrimination. The first one, filed on February 14, 2020, was filed with the EEOC and docketed as EEOC Charge No. 470-2020-01735. A copy of this first Charge is docketed at ECF No. 24-1. This Charge includes a discussion of the Ricoh weapons policy and alleges that it was used as a pretext to terminate Beiswanger due to his age; i.e., it alleges an ADEA disparate treatment claim. The Charge does not allege or even discuss a disparate impact claim.

Beiswanger filed a second Charge of Discrimination was filed on March 6, 2020, with the City of Fort Wayne Metro Human Relations Commission and docketed as Charge No. 24D-2020-00139. A copy of this second Charge is docketed at ECF No. 24-2. This Charge includes essentially the same allegations as the first one and reiterates the discussion regarding the weapons policy. Again, Beiswanger does not allege a disparate impact claim in this Charge.

Ricoh argues that Beiswanger's failure to allege a disparate impact claim in his Charges of Discrimination requires dismissal of that claim:

> [D]isparate treatment and disparate impact claims are separate and distinct legal claims. If a plaintiff exhausts his administrative remedies only as to a disparate treatment claim, a disparate impact claim brought later in a lawsuit is subject to dismissal for failure to exhaust administrative remedies. *See e.g., Dixon v. Bryson*, No. 4:10-cv00072-SEB-WGH, 2013 U.S. Dist. LEXIS 36722 (S.D. Ind. Mar. 18, 2013) (dismissing disparate impact claim because charge alleging disparate treatment insufficient to exhaust administrative remedies for disparate impact claim); *Greater Indianapolis Chapter of N.A.A.C.P. v. Ballard*, 741 F. Supp. 2d 925, 939-40 (S.D. Ind. 2010) (same); *Welch v. Eli Lilly & Co.*, No. 1:06-cv-0641, 2009 US DIST LEXIS 21417 (S.D. Ind. Mar. 18, 2009) (same); *see also Ptasznik v. Univ. of Pa.*, 523 F. App'x 156 (3d Cir. 2013) (same). That is precisely what has occurred here, requiring dismissal of the disparate impact claim.

*Id.*, pp. 6-7.

In response, Beiswanger insists that he "did not fail to exhaust his administrative

14

remedies as to his disparate impact claim against any of the Defendants. 'Courts review the scope of an EEOC charge liberally.'" Plaintiff's Response (ECF No. 35-1), p. 5 (quoting *Huri v. Office of the Chief Judge of the circuit Court of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015)). Beiswanger argues that in his Charges he "detail[ed] the application [of the weapons policy] and describ[ed] the adverse impact such application had on older workers" and that this "was sufficient to place Defendants on notice of a potential disparate impact claim." *Id.*, pp. 5-6. In this case, even a liberal and generous reading of Beiswanger's Charges of Discrimination does not reveal a disparate impact claim. The Court has considered Beiswanger's arguments, drawn all reasonable inferences in his favor, and finds unavailing his argument that his Charges of Discrimination were sufficient to put Ricoh on notice that he was pursuing a disparate impact claim. The Charges allege facts (set out above) that support a cause of action for disparate treatment and it would take more than a liberal reading of those allegations to find that they state (or even imply) a disparate impact claim. Accordingly, as Ricoh maintains, Beiswanger failed to exhaust his administrative remedies as to his disparate impact claim and that is another reason his claim cannot survive Ricoh's motion to dismiss. The Defendants' motion to dismiss this claim is granted.

## CONCLUSION

For the reasons set forth above, the Partial Motion to Dismiss Amended Complaint filed by the Defendants, Ricoh USA, Inc., Lisa Jerrett and Garrett Broderick (ECF No. 24) is GRANTED. The Motion for Hearing filed by Plaintiff Daniel Beiswanger (ECF No. 32) is DENIED. Ricoh did not seek dismissal of Beiswanger's disparate treatment claim and that claim remains pending (against Ricoh only).

Date: October 20, 2021.

/s/   William C. Lee  
William C. Lee, Judge  
U.S. District Court  
Northern District of Indiana